## SUPREME COURT.

JOHANNES OERTEL and GEORGE T. JAMES agt. MAX JACOBY
and DAVID V. ZELLER

Where the plaintiffs voluntarily *publish pictures* to the public, for which they claim
the proprietary right, the published copies furnish the defendants the means of
reproducing the pictures without any invasion of the plaintiffs' proprietary rights
therein.

*Special Term, December,* 1872.

THE complaint and affidavits show : 1st. Oertel, author of
the paintings " Rock of Ages " and " Christian Charity ;"
2d. An exclusive right communicated by him to James to
multiply copies of the paintings, and sell them on joint ac-
count ; 3d. The reproduction and publication by James, pur-
suant to contract with Oertel, of chromo-lithograph and pho-
tograph copies of the paintings ; 4th. The subsequent pub-
lication and sale by defendants, without plaintiffs' consent, of
chromo-lithographs of the paintings ; but whether defendants
copied from the original pictures, or from plaintiffs' reproduc-
tions, is not distinguished by the papers.

An interim injunction restrained the publication or sale by
defendants of any reproductions, copies or imitations, in any
form or style, of plaintiffs' paintings, chromos or photographs;
and the motion is to dissolve the injunction for want of equity
in the complaint.

ROGER A. PRYOR *for defendants.*

I. The complaint must exhibit an equity to ultimate relief
by injunction (*Code of Procedure,* §219).

An interim injunction will not issue, except plaintiffs' right be clear. If the right be questionable, injunctive relief will be withheld until the final hearing (*Amoskeag Co.* agt. *Spear*, 2 *Sandf.*, 599 ; *Sweet* agt. *City of Troy*, 62 *Barb.*, 634 ; *Redfield* agt. *Middleton*, 7 *Bosw.*, 649 ; *Gilliver* agt. *Snaggs*, 2 *Eq. Cas.*, *Abr.* 522 ; *Spottiswood* agt. *Clark*, 2 *Phillips'* *Ch.* 154 ; *Ld.* MANSFIELD *in Millar* agt. *Taylor*, 4 *Burr.*, 2,303 ; *Southey* agt. *Sherwood* 2 *Meri.*, 435.)

II. Here plaintiffs' right is more than doubtful ; it is obvious on the face of their papers, that their claim of copyright is a frivolous pretence.

III. Copyright is the exclusive right to make and multiply copies of a composition (4 *Burr.*, 2,303), and is of two species, viz., common-law copyright, or copyright *before* publication, and statutory copyright, or copyright *after* publication (*Palmer* agt. *De Witt*, 47 *N. Y.*, 532 ; 1 *Bell's Comm.*, 116, 119 ; *Copinger on Copyright*, 1, *note* ; *Shortt on the Law of Literature and Art.*, 2 ; *Curtis on Copyright*, 83 ; *Wheaton* agt. *Peters*, 8 *Peters*, 591 ; *Boucicault* agt. *Fox*, 5 *Bl. C. C.*, 97).

IV. Copyright after publication exists by statute (*Palmer* agt. *Dewitt*, 47 *N. Y.*, 536 ; POLLOCK, *C. B.*, and PARK, *B.*, *in Jeffries* agt. *Boosey*, 4 *House of Lords Cases*, 920, 935 ; *Donaldson* agt. *Beckett*, 4 *Burr.*, 2,408 ; 2 *B., P. C.*, 129 ; *Shortt on the Law of Literature*, 65).

Being the creature of positive institution, statutory copyright is recognized and protected only by the municipal law by virtue of which it exists (*Curtis on Copyright*, 22 ; *Copinger*, 77 ; *Shortt*, 65 ; *Jeffreys* agt. *Boosey*, *supra* ; *Story on Conflict of Laws*, §§ 7-18, 375, 425, 436).

No statutory copyright is here alleged ; and if asserted, this court has no jurisdiction to enjoin its infringement (*Dudley* agt. *Mayhew*, 3 *N. Y.*, 9).

V. Copyright *before publication* exists independently of positive law, is a right of universal recognition and remediable in all courts, and is controlled by the principles that de-

termine the title, nature and incidents of ordinary property (*Palmer* agt. *De Witt, supra*; *Woolsey* agt. *Judd*, 4 *Duer*, 380; *Shortt*, 1 *et seq.*; *Copinger*, 1; *Donaldson* agt. *Beckett, supra*; *Jeffreys* agt. *Boosey, supra*; *Millar* agt. *Taylor*, 4 *Burr.*, 2,303; *Prince Albert* agt. *Strange*, 13 *Jurist. Part* 1, 112; *Wheaton* agt. *Peters*, 8 *Peters*, 591; *Bartlett* agt. *Crittenden*, 4 *McLean*, 300; *Southey* agt. *Sherwood*, 2 *Meri.*, 435; *Percival* agt. *Phipps*, 2 *V & B.*, 19; *Gee* agt. *Pritchard*, 2 *Swans.*, 403 (*marg. pag.*); *Crowe* agt. *Aiken*, 4 *Am. Law Rev.*, 450; *Macklin* agt. *Richardson, Amb.*, 695). Although Atticus freely distributed copies of Cicero's Letters (*Corn. Nep. in Vit. Attici*), it appears from an allusion by Juvenal, (Sat. VII., 87), that a property right in manuscript was recognized among the Romans; but before the art of printing, the civil law knew nothing of literary property (*Vinnii Inst. Lib., II., Tit.* 1, *s.* 33., *de Scriptura*).

The common law, after some hesitation, applied its principles to the protection of the products of the mind, as well as of mechanical labor (*Millar* agt. *Taylor*; *Donaldson* agt. *Beckett*; *Wheaton* agt. *Peters*; *Bartlett* agt. *Crittenden, svpra*).

VI. " In the sense in which copyright is commonly understood it comprehends, first, the right belonging to the author *before publication*, that is, the right to publish or not, as he thinks fit, and to restrain others from publishing; and, secondly, the right, *after publication*, of republishing and of restraining others from doing so" (PARKE, *B.*, 4 *H. of L. Cases*, 954; *Lord St.* LEONARD'S, *id.* 979). Copyright before publication is the right subsisting in the author or artist to the first publication of his work (*Palmer* agt. *De Witt*, 47 *N. Y.*, 536).

Common law copyright *ends* on publication. (*Lds.* BROUGHAM *and* ST. LEONARD'S, *in* 4 *H. of L., Cases* 961, 977, *and authorities supra*). Statutory copyright *begins* with publication (*Jeffreys* agt. *Boosey, supra*).

VII. A publication of the work, whether book or picture,

with the author's or artist's assent, is an abandonment of his common law copyright. The work then becomes *publici juris*, and is open to any occupant. After publication with the author's or artist's consent, all may copy and reproduce (*Palmer* agt. *De Witt*, 47 *N. Y.*, 532 ; *Crowe* agt. *Aiken*, 4 *Am. L. Rev.*, 450; *Keene* agt. *Wheatley*, 9 *Am. L. Reg.*, 33 ; *Boucicault* agt. *Fox*, 5 *Bl. C. C.*, 98 ; *Bartlett* agt. *Crittenden*, 4 *McLean*, 301 ; *Keene* agt. *Kimball*, 13 *Monthly Law Reporter*, *N. S.*, 669 ; *Donaldson* agt. *Beckett*, 4 *Burr.*, 2,408 ; 2 *B. P. C.*, 129 ; *Southey* agt. *Sherwood*, 2 *Meri.*, 435 ; *Cox* agt. *Cox*, 11 *Hare*, 118 ; *Jeffreys* agt. *Boosey*, 4 *H. of L. C.*, 815 ; *Chappell* agt. *Purdy*, 14 *Mee. & W.*, 303, 319, 322 ; *Prince Albert* agt. *Strange*, 13 *Jurist*, 112 ; 18 *part* 1, *L. J.*, *N. S.*, 120 *Ch.* ; *Clementie* agt. *Walker*, 2 *B. & C.*, 861 ; *Page* agt. *Townsend*, 5 *Simonds*, 395 ; *Guischard* agt. *Mori*, 9 *L. J.*, 227 *Ch.* ; *White* agt. *Geroch*, 2 *B. & Ald.*, 298 ; *Duke of Queensberry* agt. *Shebbere*, 2 *Eden*, 329 ; *Cambridge University* agt. *Bryer*, 16 *East.*, 317 ; *Curtis on Copyright*, 63 ; *Shortt*, 48, 54). "By the act of publication the work is in the hands of the world" (1 *Bell's Comm.*, 119).

The principle prevails in the law of patents. If the inventor allow his machine to be used by the public, he abandons his right (*Gaylor* agt. *Wilder*, 10 *How. U. S.*, 477 ; *Shaw* agt. *Cooper*, 7 *Peters*, 292.

VIII. If common law copyright survive publication, then was there never occasion for any statutory protection. It is only because the author's natural right expires with publication, that legislation is necessary to give him an artificial privilege.

It is matter of history that the English act for the copyright of prints originated with Hogarth. who found no protection in the common law against the indiscriminate reproduction of his works (1 *Bell's Comm.*, 123).

IX. What constitutes a publication effectual to forfeit the author's or artist's common law copyright is settled as well

affirmately as negatively. Thus the performance of a play
(*Macklin* agt. *Richardson, Ambler*, 695 ; *Palmer* agt. *De Witt, supra*), the exhibition of a picture under restrictions, (*Turner* agt. *Robinson*, 10 *Irish Ch. R.*, 121) the oral delivery of lectures (*Abernethy* agt. *Hutcheson*, 3 *L. J.*, 209 *Ch* ), the sending private letters to a correspondent (*Wolsey* agt. *Judd, supra*), the engraving a picture for private use and gratuitous distribution among select friends (*Prince Albert* agt. *Strange, snpra*), the entrusting a manuscript for a special purpose (*Queensberry* agt. *Shebbere, supra*)—none of these acts is equivalent to a publication.

On the other hand, that the copying a picture, and exposing the copies for general and indiscriminate sale, with the assent of the artist, is such a publication as makes the right to copy the original, *publici juris*, is conceded by all authorities and questioned by none (*Palmer* agt. *De Witt, supra* ; *Crowe* agt. *Aiken, supra* ; *Keene* agt. *Wheatley, supra* ; *Prince Albert* agt. *Strange, supra ; Jeffreys* agt. *Boosey, supra ; Curtis*, 83, *et seq. ; Shortt*, 48 *et seq. ; Copinger*, 9, 59, *and other authorities, supra.*

X. Photography and lithography being essentially different from oil painting, it may be argued that the publication of James's copies was no publication of the original pictures. But the thing in which an artist has copyright, is the conception and developement of his ideas ; and these it is the boast of photography and lithography exactly to reproduce. A picture is analagous to a manuscript ; and an engraving is the same as a book. A lithographic copy more resembles the original painting in every physical circumstance, than does a book the author's manuscript. But if James' copies be not a publication, because not a reproduction of the original pictures, then neither are defendants' copies a reproduction of the original paintings, and so, are not an infringement of Oertel's rights.

XI. By communicating to James the right to multiply and vend an indefinite number of copies of his paintings,

and by assenting to the copying and sale, Oertel abandoned his common law right, and defendants were authorized to make and sell copies of the originals ; and, by publishing his lithographs without the protection of a statutory copyright, James dedicated them to the public, and every one is at liberty to reproduce them.

XII. Oertel had no exclusive right to republish after publication, and he could communicate none to James.

XIII. Even if defendants had no right to copy from the originals, this injunction cannot stand ; because it is not apparent but that defendants reproduced from James' lithographs ; and *that* they had an indisputable right to do. The law construes an equivocal act in a legal sense.

Moreover, copying from the originals, if wrongful, would be a violation of Oertel's exclusive right, and would give no cause of action to James.

XIV. If defendants had copied from the originals, and in doing so had invaded Oertel's premises, or violated any trust, or had infringed his possessory or proprietary right in the physical substance of his pictures, then he might have had redress by the appropriate form of remedy. But nothing of the sort is here pretended. The injunction must stand or fall upon the case presented by the papers, and that case is simply an alleged infringement of plaintiffs' common law copyright.

XV. *Maxwell*, agt. *Mayhew* (1 *Johns. and Hemming*, 313) does not touch the question here either in the adjudication or argument.

The right there involved was a right under the British statute of copyright, and the decision turned exclusively on the construction of that statute.

In *Cox* agt. *The Land and Water Journal* (*Law Rep.*, 9 *Eq. Cases*, 324,) Vice-Chancellor MALINS propounds the doctrine for which plaintiffs contend ; but it was a mere *dictum*, unsupported by any citation of authority, and notori-

ously contrary to the well-settled law of this country. More-over, an injunction was there denied.

Counsel for plaintiff, in *Turner* agt. *Robinson* (10 *Irish Ch.* 121), conceded the principle on which we stand, viz., that a publication is an abandonment of the artist's right, and the master of the rolls assumed it as an indisputable proposi-tion. The decision proceeded on the assumption that an "imperfect" woodcut, inserted in a magazine, was no publi-cation of the original painting—an essentially different case from ours—and on the ground of a breach of trust by de-fendant in copying contrary to implied restrictions attached to the privilege of seeing the painting. No such misconduct is imputed to us,

*Oertel* agt. *Wood* (40 *How.*, 10) is of no authority (*Palmer* agt, *DeWitt*, 47 *N. Y.*, 532).

XVI. Plaintiffs may possibly heed the hint suggested by the editor in his criticism on *Crowe* agt. *Aitken* (4 *Am. L. Rev.*), and may assert a trade-mark right in James's copies. The claim is invalid, because, first, no trade-mark right in plaintiffs is alleged or exhibited by the papers; secondly, the relief prayed is not to restrain the use of a trade-mark in the sale of defendants'chromos, but to enjoin the reproduction or sale of plaintiffs' pictures in any style or form of imitation; thirdly, the injunction granted does not purport to inhibit the use of plaintiffs' trade-mark in connection with defend-ants' chromos, but assumes to restrain any reproduction or imitation of plaintiffs' pictures with or without the pretended trade-mark; fourthly, if there be a trade-mark right in plain-tiff, it is infringed by defendants in the sale of only one of their chromos, since to only one of the chromos have they applied the descriptive appellation employed by plaintiffs. But, fifthly, and conclusively, the pretended trade-mark does not indicate origin or ownership, but is merely a printed re presentation of the idea embodied in the picture; and so, is not the subject of trade-mark property (*Canal Co.* agt. *Clarke,* 13 *Wall., U. S.,* 322, 323; *Amoskeag Co.* agt.

*Spear,* 2 *Sandf.,* 608, *et seq ; Thompson* agt. *Winchester,* 19 *Pick.,* 214; *Filley* agt. *Fassett,* 44 *Mo.,* 173 ; *Candee* agt. *Deere,* 54 *Ill.,* 439; *Ferguson* agt. *The Doval Mills,* 2 *Brewster,* 314; *Corwin* agt. *Daly.* 7 *Bosw.,* 222; *Fetridge* agt. *Wells,* 4 *Abb.,* 144; *Stokes* agt. *Landgraff,* 17 *Barb.,* 608; *Town* agt. *Stetson,* 5 *Abb., N. S.,* 218 ; *Phalon* agt. *Wright,* 5 *Phil.,* 464 : *Wolf* agt. *Garland,* 18 *How.,* 64 ; *Choyniski* agt. *Cohen,* 39 *Califor.,* 501).

XVII. If any trade-mark be asserted it must consist of the words " Rock of Ages," inscribed upon the picture and copies. These words constitute part of the title of a hymn, which is found in all the collections of every denomination of the protestant community, and which is a familiar household strain among every sect of christians.

This sacred song was written by Thomas Montague Toplady, and was published in the *Gospel Magazine* of March, 1776, (page 131,) with the title of " A living and dying prayer for the holiest believer in the world"; but as the hymn grew popular, the first, which is also the penultimate line was substituted as a shorter and more significant name. A Latin version by the right honorable Wm. E. Gladstone, beginning " *Jesus pro me perforatus,*" was printed by Quaritch in 1861. The idea of the hymn, " Christ the rock of salvation," pervades the sacred scriptures, and the identical expression " Rock of Ages" is in the original Hebrew text, rendered in our version, " Everlasting strength"—(*Isaiah,* 26, 4). Oertel's painting, and the copies both of plaintiffs and defendants, simply embody with varied accessories of embellishment, the sentiment of the second line in the third verse of Toplady's hymn, " Simply to thy cross I cling." The title of the painting is borrowed from the hymn, and is merely expressive of the subject and indicative of the idea. Clearly it is not susceptible of a trade-mark property.

XVIII. Plaintiffs claim a monopoly, which the law will not tolerate. They assert an exclusive right to multiply and distribute reproductions of their pictures. If such right

exist it is transferable and descendible as other personalty, and must subsist in perpetuity in exclusion of the public. It is a right above and beyond that created and protected by the copyright law. The interests of civilization require the utmost diffusion of the products of the intellect. Humanity is concerned in whatever consolation art may draw from the inspirations of scripture or poetry.

Repudiating the pretension here urged by plaintiffs, Napoleon I. said, *Le progres des lumieres serait arrete &c.,* (*Locre, Legislation civile de la France, tit.* 9, *pp.* 17, 19). The interest of the individual author is not the ultimate object of the copyright laws, but is an expedient rather for the public welfare. The operation of these laws is to secure the author an exclusive use for a limited period, that he may be stimulated to the production of works for the benefit of mankind. (*Routledge* agt. *Low,* 37 part. 1, *L. J.,* 454, *Ch. per Lord* CAIRNS; *Curtis on copyright,* 19). The first copyright law —of Anne—was entitled " An act for the encouragement of learning"; the second—of George III.—" An act for the further encouragement of learning." (*U. S. Constitution,* § 8, *Art.* 1).

To recognize plaintiff's claim would be to obstruct the pro gress of letters and to restrict the benign influences of art.

XIX. The injunction should be vacated.

CLARENCE A. SEWARD, *for plaintiffs,*

Used the same points for plaintiffs contained in this case in 40 *How., Pr. R. ,p.* 10.

LEONARD, J.—It appears from the complaint that there has been a publication by the plaintiffs of the pictures mentioned in the injunction.

The defendants cannot be charged with having surreptitiously obtained copies of the originals. The published copies furnished the defendants with the means of re-pro-

ducing the pictures without any invasion of the proprietary rights of Mr. Oertel.

The defendants have not anticipated the publication by plaintiffs. They have the right to re-produce the pictures that have been voluntarily given to the public.

I think the private rights of the plaintiffs are no longer entitled to protection according to the adjudicated case. (*Palmer* agt. *De Witt*, 47 *N. Y.*, 532).

Injunction dissolved; costs to abide the event, $10.